## BROWN v. BROWN.

A way laid out for the accommodation of an individual, subject to gates or bars to be erected and maintained at the expense of such individual, his heirs or assigns, is a public highway.

Selectmen laid out a highway for the accommodation of individuals over the plaintiff's close, and, in their return of said laying out, declared as follows: the highway "is to be made by the petitioners, and to remain a highway so long as said petitioners shall keep it in repair, and no longer."

In trespass against the defendant for using said highway upon the plaintiff's land,—*held:* 1. That the selectmen had no power to require the road to be made or kept in repair by the petitioners. 2. This condition and limitation being contrary to law, was void; and it was so intimately connected with all the proceedings relating to the laying out of the highway, that it could not be rejected and the remainder of the acts of the selectmen established; but the unlawful condition contaminated and invalidated the whole proceeding. 3. The laying out of the highway in the manner aforesaid was voidable by the plaintiff, whose land had been taken for such highway. 4. But he could only impeach the validity of the laying out of the highway by proceedings instituted for that purpose. 5. The judgment of the selectmen, in laying out and establishing the highway, though erroneous, must stand until reversed by a superior legal tribunal having authority to set the same aside; and, 6. In the meantime, the plaintiff cannot maintain trespass against a person using the highway in the ordinary manner of a traveller thereon.

TRESPASS, by Moses Brown against Parker Brown, for breaking and entering the plaintiff's close, between January 1, 1869, and the date of the writ, March 13, 1869, and breaking down his fences, &c.

The defendant pleaded the general issue, and also that at the times when, &c., there was a highway over and across the plaintiff's close upon which all the inhabitants of the State had the right to pass, subject to gates or bars to be maintained by the defendant and others ; and that the defendant, being of this State, did pass and repass over and along said highway, as he lawfully might, and that he removed a fence wrongfully erected by the plaintiff across the said highway, which obstructed the same, it being necessary to do so to enable him to pass, but doing no unnecessary damage ; which are the same trespasses described in the plaintiff's declaration.

In another plea, the defendant sets out a right of way, by prescription, for all the inhabitants of Bow to pass across the said close of the plaintiff, subject to gates or bars.

Another plea sets up a similiar way, with some immaterial modifications.

The sixth plea sets up a private right of way in the defendant, by prescription, subject to gates or bars.

The replications traverse the existence of any such highway, or other way, as described in defendant's several pleas; on which, issues were joined.

At the trial term, it appeared that the defendant had entered upon and passed over the plaintiff's close, as alleged in the declaration, and in doing so had left open the gates of the plaintiff, opening into the way described in the pleas ; and the defendant offered in evidence the record of the laying out by the selectmen of Bow of a highway, for the accommodation of individuals over and across the plaintiff's said close, subject to gates or bars. The return stated, among other things, "That the selectmen, having made a personal examination of the route proposed, and having duly considered said petition, are of the opinion that there is occasion for a new highway on the route described in said petition : We therefore lay out the same, as follows " (describing the line) ; and also stated that " The line above described is to be the northerly line of the highway; and the highway is to be twenty feet wide, and to be made by the petitioners, and to remain a highway so long as said petitioners shall keep it in repair, and no longer. Said highway is to be subject to the maintenance of gates or bars to be erected and maintained by said petitioners."

The plaintiff objected that this laying out was invalid, by reason of the condition above stated, and also that, in consequence of so leaving open the gates, the entrees of the defendant were unlawful.

The court, *pro forma*, overruled these positions ; and there being no other objection to the defence, the court ordered a verdict for the defendant upon the general issue, and upon the issue upon the plea setting up a highway.

The questions of law arising on this case were reserved for the whole court.

*Minot, Tappan & Mugridge*, for the plaintiff.

I. The road in question was laid out for the accommodation of the petitioners by the selectmen of Bow, on the 5th day of January, 1869, as appears by a copy of the record of laying out, which is made a part of the case. By sec. 12, chap. 61 of the General Statutes, it is provided that " any highway for the accommodation of an individual may be laid out, subject to gates or bars across the same as may be expedient, to be erected and maintained by the person, his heirs or assigns, for whose benefit the way is laid out; *but no other condition shall be affixed to the said laying out, or imposed on the individual for whose benefit the laying out was made."* By sec. 1 of chap. 64, the damages for land, taken in cases where highways are laid out for the benefit of an individual, are to be paid by him.

But these roads, subject to gates and bars, are to be " made " or built, and kept in repair, *by the town*, the same as other highways; and no different rule applies to them, in this respect, than such as is applicable to ordinary public highways. General Statutes, chap. 61, secs. 14 and 15; General Statutes, chap. 68, sec. 1; *Proctor* v. *Andover*, 42 N. H. 348. They are *public* highways, although subject to gates and bars. *Metcalf* v. *Bingham*, 3 N. H. 459; *Proctor* v. *Andover*, 42 N. H. 348.

II. The selectmen, in the case at bar, have attempted to lay out and establish a different highway from any known to the law. They have " affixed conditions" to this laying out, which are in direct violation of the statute, to wit:

1. That the way shall be " *made by the petitioners."* 2. That the same " *shall remain a highway so long as the petitioners shall keep the same in repair, and no longer."*

By the first condition, the building of the way is devolved upon parties who are under no obligation to build and keep in repair. There is no way provided by which the petitioners could be compelled to " make " it. No indictment will lie against them for any neglect to build it. General Statutes, chap. 68, sec. 1. Nor can the town be compelled to build it, for the report of the selectmen shows that they are *not* to build it. It follows, therefore, as a logical result, that *there has been no laying out of any road at all*, and the attempt in that direction is simply and absolutely void. And the last condition involves this absurdity, that if the plaintiff, or any other individual, should suffer injury by defects in the way, the very fact that it was out of repair would *preclude his right to recover ;* for the moment it became out of repair, that moment it ceased to be a highway! If it be contended that these *conditions* may be void, and yet the laying out be well enough, we say:

III. As against this plaintiff, the laying out of this road was absolutely *void.* He is the party directly interested. His was the only land that was taken (and taken, too, as we say the record shows, without any regard to considerations of *public* utility), and he is therefore in a position to take advantage of any defect or illegality on the part of the authorities who laid out the road. However it might have been if

the question had arisen between other parties, as to him it is not merely the *conditions* that are void, but the laying out is wholly so, and the validity of the proceedings may be called in question *collaterally*. *Pritchard* v. *Atkinson*, 3 N. H. 335 ; *Dudley* v. *Cilley*, 5 N. H. 561 ; *Robbins* v. *Bridgewater*, 6 N. H. 524 ; *State* v. *Richmond*, 26 N. H. 232. There is no disagreement, as we understand it, between the doctrine of the cases of *Pritchard* v. *Atkinson*, *Dudley* v. *Cilley*, and *Robbins* v. *Bridgewater*, and that of *State* v. *Richmond*, so far as this plaintiff is concerned. He has an " interest in the matter," and is thus brought within the decision of *State* v. *Richmond*. He is in a " situation " to take advantage of any illegality. *Gurnsey* v. *Edwards*, 26 N. H. 229. It makes no difference in a case like this whether a *certiorari* does or does not lie to reverse the proceedings of the selectmen. In *State* v. *Richmond*, 26 N. H. 236, the court say : " Though it is true that where a *certiorari* does not lie to reverse or set aside a proceeding because it is not of a judicial character, such proceeding may be impeached by proof when collaterally brought in question ; yet this is equally true of the proceedings of inferior tribunals of special and limited power, though they may be beyond dispute of a judicial character, and liable to be reversed on a *certiorari* if such tribunal has acted in a case or against a person, *or by a process or mode of proceeding beyond its jurisdiction* and not warranted *by law*. The principle is general, that wherever any persons assume to act under a special and limited power conferred by law, their doings may be avoided by showing that they had no jurisdiction, *or that they have exceeded the limits of their authority*." But the case of *Holcomb* v. *Moore*, 4 Allen 529, is a case exactly in point, and in fact goes on all fours with the case under consideration. It was an action of trespass *quare clausum*. In that case, selectmen laid out a private way over plaintiff's land, the laying out containing this condition : " *The way so laid out to be used only during the time of sleighing*." The defendant afterwards travelled upon said way, as one of the persons for whose benefit it was laid out—which is exactly the *status* of the plaintiff and defendant in the case at bar. The court, in giving their opinion, say : " The right of the selectmen of towns to lay out private ways for the use of individuals  *  · *  is wholly given by statute ; and, unless their proceedings are authorized by the statute, they are invalid. We are not aware of any provision for the location of a way for use a portion of the year only ; much less for a way to be used only during the time of sleighing. Such a laying out of a way, being objectionable as a basis for assessing damages, and unwarranted by law, is of no validity, and the owner of land through which it is located may so treat it. In case a private or town way has been illegally located by the action of the selectmen, no *certiorari* is necessary to quash the proceedings, but the owner of the land may resort to his action of trespass against those who enter upon his land and use such way against his consent."

IV. The record of the laying out in this case, as it seems to us, shows a total disregard of all the considerations that ought to enter into the laying out of a highway.

It was laid out for the accommodation of these petitioners *alone.* It was not of sufficient consequence, in the opinion of the selectmen, to warrant the throwing of the burden of " making " and keeping in repair upon the town. It was not to remain a highway after it got out of repair. All the considerations of " public exigency and convenience," and the " rights of individuals whose lands are taken " *(Dudley* v. *Cilley),* were completely ignored ; for, if it was not of sufficient necessity to warrant the making of it by the town,—if it was to remain a highway only for an indefinite period,—then the public, in the judgment of the selectmen, had no beneficial interest in it ; and if such was the fact, they transcended their authority, and their action stands as a mere bald, naked attempt to take the land of one man, against his consent, and give it to others. We do not contend that the land of one individual can never be taken to build a road for the accommodation of another, but we say that it ought not to be done in cases (as in the present) where the record of laying out utterly negatives every other consideration except the interest and benefit of such other. " Very clearly, the right of eminent domain does not authorize the government, even for a full compensation, to take the property of one citizen and transfer it to another, where the public is not beneficially interested in the transfer." Angell on Highways 65 ; *Beekman* v. *Saratoga & Schenectady Railroad Company,* 3 Paige N. Y. C. H. 45, and numerous authorities cited in note to Angell on Highways 65. " Under what circumstances a highway may be laid out to accommodate an individual, has not been settled. It is however supposed that a case of strong necessity alone can furnish a proper occasion for such a highway, and justify the taking of the land of one individual against his will, for the accommodation of another individual." *Dudley* v. *Cilley,* 5 N. H. 560.

This difficulty in reference to the taking of private property for private purposes is perhaps obviated to some extent by the adoption of the rule that ways such as this are public highways. *Metcalf* v. *Bingham, Proctor* v. *Andover,* before cited.

It is only on this ground, as we apprehend, that the laying out of such ways, and the taking of private property therefor, can be sustained. In *Proctor* v. *Andover* the court say, " the taking of land of private persons for such roads is clearly contemplated, and that is inconsistent with the idea that they are to be regarded as ways for private use." The fact, also, that the statute throws the burden of " making " and keeping in repair such roads upon the town, as in the case of other highways, shows their distinctive public character, and perhaps relieves it from the objection of unconstitutionality. We contend, therefore, that it should appear at least negatively from the report, that the public, as well as the particular individual or individuals asking for the way, had some " beneficial interest " therein. If the report in this case had merely stated that the road was laid out for the accommodation of these petitioners, and there left it, the rights of the public might follow as inference of law which the court could pronounce. But what we complain of is, that the record of laying out excludes all idea of public interest, and, so far as the selectmen could do so, makes

it one for mere " private use," such as the court in *Proctor* v. *Andover* say was not contemplated, and, by fair inference, would be unwarranted ; that it was a road of so unimportant a character, that the selectmen declined to subject the town to the expense of making it and keeping it in repair ; that it is so *nondescript* in all its features that no court ought to sustain it ; and, in a word, that from all the facts disclosed by the record, it clearly appears that no such " strong case"—to use the language of the court in *Dudley* v. *Cilley*—was made out, as would justify the selectmen in taking the plaintiff's land for this way.

*Flint,* on the same side.

In laying out highways, the proceedings as against land owners being *in invitos,* the selectmen must proceed according to law, or their doings are illegal and void. *Robbins* v. *Bridgewater,* 6 N. H. 524; 3 Greenl. 438. A highway laid out in pursuance of a vote of the town is illegal and void. *State* v. *Newmarket,* 20 N. H. 519. If the petitioners agree with the selectmen to withdraw their opposition, the report of commissioners will be set aside. *Knowles's Petition,* 22 N. H. 361. The laying out of highways, upon any inducements not sanctioned by law, is illegal and void. *Dudley* v. *Butler,* 10 N. H. 281 ; *Gurnsey* v. *Edwards,* 26 N. H. 224. A highway subject to gates or bars is a public highway, and the town is liable for any damage arising from its being out of repair. *Proctor* v. *Andover,* 42 N. H. 348 ; *Metcalf* v. *Bingham,* 3 N. H. 459.

This highway was laid out " as follows,"— that is, upon two express conditions, both of which were illegal,—viz.: 1. That it should " be made by the petitioners." 2. That it should " remain a highway as long as said petitioners shall keep it in repair, and no longer ; " and as the road could not legally be laid out in this way, it was not laid out at all. The attempt at laying out was illegal and void. General Statutes, chap. 61, sec. 12.

These conditions are of the substance of the laying out, and inseparable from it. A highway does not exist in fact until it is "made ; " and as the order for making it was illegal and void, it could never have had a legal existence.

Here was an attempt to constitute a highway of a kind, in a manner, and upon principles totally repugnant to our laws—a highway wholly under the control of the petitioners, to build or not to build as they saw fit, to keep in repair as long as they pleased and no longer, without any regard to the public wants, and which the town should be under no obligation to build or keep in repair. Such an attempt was wholly without authority of law, and was utterly void. We have no law for laying out such a highway—no law to compel the petitioners to make it or to keep it in repair.

Indeed, it seems as if the legislature could have no authority under the constitution to enact such a law,—taking private property from its owners merely for the benefit of individuals. It is to a demand for the public good and for the public use that private rights must yield, and not to private interests merely.

*Marshall & Chase,* for the defendant.

In this case, only two questions of law have been transferred to this court for decision; and the plaintiff's counsel, in their briefs, have argued only one of these questions. We will consider that one first, viz.:

I. Was the laying out of the road in question invalid by reason of the clause contained in it, as stated in the case?

(1.) By referring to the fifth edition [1866] of the Town Officer, page 173, section 24, it will be found that the objectionable portion of the laying out in this case was copied exactly from the form there given. The same form is given in the first edition of the Town Officer, edited by the late Chief Justice BELL, page 131, and also in Chief Justice RICHARDSON's Town Officer, published in 1829, page 284. For nearly forty years this has been the only form that selectmen have had to guide them in cases of this kind; and being inserted in the several editions of the Town Officer, it has thereby received the sanction of their several editors, who have been some of the ablest lawyers that the State has had. It is evident that the selectmen, who laid out the way in question, had one of these editions of the Town Officer before them when they made the return thereof; and if they made any mistake, it resulted from relying upon what seemed to be good authority, *and was a mistake of form and not of substance.*

(2.) It is evident, also, that a very large proportion, to say the least, of all the private ways that have been heretofore laid out in this State are founded upon a return similar to the one in question; and if this one fails, many of those must fail also. See *Proctor* v. *Andover,* 42 N. H. 350, for an example of a return of a private way, similar to the one in question. We are aware that the General Statutes contain a provision upon this subject that was introduced by the joint select committee of the legislature when the statutes were passed (see Com'rs' Report, page 145, sec. 12, and Report of Joint Select Committee, page 8), and which was not contained in any previous statute. Gen'l Stat., chap. 61, sec. 12; Laws of N. H. (1797), page 309; ditto (1815), page 385; ditto (1830), page 573; Revised Stat., chap. 52. But no previous statute contained express or implied authority for imposing the burden of building and maintaining private ways upon the petitioners therefor. Under previous statutes it has been uniformly held that ways of this kind, though originally laid out at the expense of the petitioners, are public highways, and like other highways must be maintained by the public, and if not properly maintained, the towns are subject to the same liabilities as in the case of other highways. *Metcalf* v. *Bingham,* 3 N. H. 459; *Clark* v. *B. C. & M. Railroad,* 24 N. H. 114; *Proctor* v. *Andover,* 42 N. H. 348; *Roberts* v. *Stark,* 47 N. H. 224. This doctrine is totally inconsistent with the idea that the petitioners must bear these burdens, and therefore we say that the General Statutes, in the section above referred to, have not changed the law in this respect; in other words, it is but an expression of the law as it previously existed. Considering, then, the large number of private ways that must stand upon

the same basis as the one in question, and the important rights of the public and individuals therein, we suggest that the court should not put forth a decision that shall pronounce these ways invalid unless the law peremptorily requires such a decision—especially, when it is further considered how these mistakes, if such they are, have occurred. (3.) The power to lay out highways, conferred by our statutes upon select-men, is of a judicial nature. *State* v. *Richmond*, 26 N. H. 232 ; *Haywood* v. *Charlestown*, 34 N. H. 23 ; *Hall* v. *Manchester*, 39 N. H. 301 ; *Boston & Maine Railroad* v. *Folsom*, 46 N. H. 64—all, in effect, over-ruling *Robbins* v. *Bridgewater*, 6 N. H. 524, upon this point. If selectmen, in laying out highways, have jurisdiction of the subject-matter, and of the parties affected thereby, but, in performing their duty, they do not proceed strictly according to the course prescribed by the statutes, their judgments *are not absolutely void* in consequence of such informalities or irregularities, but *only voidable.* They are not voidable, even, by every one, but only by those whose rights and interests have been disregarded by the neglect to comply with the law. *State* v. *Richmond*, 26 N. H. 232, which is the leading case upon this subject. In this case the use of the word " *void,*" in *Pritchard* v. *Atkinson*, 3 N. H. 335, *Dudley* v. *Cilley*, 5 N. H. 561, and *Robbins* v. *Bridgewater*, 6 N. H. 524, and generally by legal writers and others, is commented upon, and the different meanings of the word, as it is commonly used, are given. The authorities cited by our brethren on the other side should be examined and weighed in the light of this case. See, also, *State* v. *Raymond*, 27 N. H. 388 ; *Proctor* v. *Andover*, 42 N. H. 353 ; *Clement* v. *Burns*, 43 N. H. 609.

In the case under consideration, no question is made but that the selectmen, when they laid out the way, had jurisdiction of the sub-ject-matter, and of the parties affected thereby. An examination of the record of the laying out will show that no question of this kind could be made. A petition for this highway in proper form was presented to them ; an order of notice was made by them thereon ; the notice required by the statute was given to the plaintiff, he being the only person over whose land the proposed highway was to pass ; the selectmen met at the time and place appointed (the place being the plaintiff's house) ; and, after examining the route and considering such evidence as was laid before them, they decided that " there is occasion for a new highway on the route described in said petition," and there-fore to lay out the same. They were not lawyers, and were therefore obliged to rely upon others for information as to the form in which their return should be made. Therefore they had recourse to a book, published for the very purpose of informing them upon these and other subjects appertaining to their official position, and bearing the indorse-ment of the best legal talent of the State. They followed its instruc-tion, and in so doing introduced an irregularity *into the form of their return.* No one can doubt but that this irregularity is one of *form* and not of *substance ;* but however this is, it does not affect the conclusion. From the principle of law above stated, it logically follows that the judgment of the selectmen, thus made and evidenced, is not absolutely

void, but only voidable, and voidable only by those whose rights and interests have been affected thereby.

We say that the plaintiff's rights and interests have not been affected by this irregularity or informality. His rights and interests grew out of his ownership of the land, and were subservient to the right of the public to take the land, or an easement therein, for a highway, whenever there was occasion, by indemnifying him therefor. Whenever the rights of the public are asserted in a proper manner, his rights and interests are not affected, because they are subject to that limitation. The statutes have made the selectmen judges of the occasion for a highway in cases of this kind, and of the amount of the indemnity to be furnished the land owner therefor. In this case, the selectmen, after legal notice to the plaintiff, thus furnishing him a full opportunity to be heard upon both these questions, have decided that there was occasion for a new highway, and have assessed his damages at fifteen dollars, from which decision he has taken no appeal. It cannot be reasonably claimed that the plaintiff's damages were assessed upon any other basis than they would have been if the objectionable clause in the return had not been there. How could the selectmen know but that the petitioners would keep the road in repair as long, at least, as it would remain a highway, if it was to be kept in repair by the town ? Upon either basis they would be obliged to assess damages for a permanent way, for it might prove such ; and would be as likely to prove such in the one case as in the other ; and if in the one case it was discontinued at any time, or in the other case the petitioners failed to keep it in repair, the land owner would be the gainer to that extent. The objection to the basis for the assessment of damages that was made in the case of *Holcomb* v. *Moore*, 4 Allen 529, cited by our brethren upon the other side, does not exist in this case. Therefore we confidently submit, that the plaintiff cannot avoid the laying out of the way in question, in this case, where its validity is drawn in question collaterally.

(4.) As a *scholium* to the foregoing, we call the attention of the court to the well established principle of law, that " every presumption is in favor of the regularity of the proceedings of the selectmen, and it is to be assumed that they in good faith adjudged the road to be necessary until the contrary is shown." *Proctor* v. *Andover*, 42 N. H. 357. It will be remembered, that in that case, not only the return of the laying out was similar to the one in question, but there was evidence that the road was laid out by the selectmen as the result of a compromise between them and the petitioners. If the way there considered was not absolutely void, certainly the one here under consideration is not. See, also, *Smith* v. *Conway*, 17 N. H. 586 ; *State* v. *Newmarket*, 20 N. H. 522.

(5.) Where a judicial tribunal *has jurisdiction*, its judgments remain good, notwithstanding irregularities and informalities, until reversed by the proper tribunal. *White* v. *Landaff*, 35 N. H. 130, and authorities there cited ; *State* v. *Rye*, 35 N. H. 377 ; *Morse* v. *Presby*, 25 N. H. 303 ; *State* v. *Weare*, 38 N. H. 316 ; *Clement* v. *Burns*, 43 N. H. 614 ;— see, also, authorities cited in Morrison's Digest 441, sec. 48. We think

we have shown that the judicial tribunal (the selectmen) had jurisdiction in this case ; and we claim, by virtue of the principle just stated, that their judgment cannot be questioned in this collateral proceeding. The party aggrieved by any irregularity or informality in their proceedings or judgment must resort to a writ of *certiorari* to have the same corrected. Formerly, it was held that this writ did not lie to correct judgments of selectmen in cases of this kind. *Robbins* v. *Bridgewater*, 6 N. H. 525. But it is held otherwise now. *State* v. *Richmond*, 26 N. H. 232 ; *Proctor* v. *Andover*, 42 N. H. 359–360 ; *Boston & Maine Railroad* v. *Folsom*, 46 N. H. 64. Justice and equity require that the party aggrieved should be compelled to resort to this remedy, *in cases where the selectmen have jurisdiction*, instead of allowing him to bring an action of trespass, and in that action trying the validity of their judgments. In this case, when the defendant entered upon the way in question—for which entry this action was brought—he believed that he had a right so to do. He knew that the selectmen had laid out the highway in question, and he supposed it was done in a lawful manner. He ought not to be subjected to damages and costs because there happens to be a defect in the proceedings of the selectmen, for which he is in no way responsible. Must every citizen, who has occasion to use a highway, examine into its validity before he ventures upon it ? Is it not more reasonable, just, and equitable, that the party who alleges a highway to be invalid by reason of irregularities and informalities in the proceedings of the selectmen in laying it out, should establish that fact by the judgment of a proper tribunal, upon proceedings had for that purpose, before the citizens composing the public shall be regarded as trespassers for passing over it ? In such proceedings the irregularities and informalities are the subjects in issue, and all the facts relating to them can be fully investigated and considered, and exact justice can be done to all parties, without punishing those who are guilty of no intentional wrong. They cannot be as fully investigated and considered collaterally ; and if, upon such investigation and consideration as can be given to them in collateral proceedings, it is held that they invalidate the highway, innocent persons are made to suffer.

The judgments of other tribunals having jurisdiction of the subject-matter and parties stand until they are reversed or set aside in this manner. Why should not those of selectmen ? Why not have a uniform rule upon this subject, applicable to all judicial tribunals ? But counsel (Minot, Tappan & Mugridge) maintain, in their brief (page 541), that *State* v. *Richmond* is an authority in conflict with this position. The court in that case say, that the proceedings of an inferior tribunal, when brought in question collaterally, may be impeached " if such tribunal has acted in a case, or against a person, or by a process or mode of proceeding beyond its jurisdiction and not warranted by law." In this case, we claim that the selectmen had jurisdiction in all these particulars. They certainly had jurisdiction of the subject-matter of the case, and of the plaintiff, having caused him to be legally notified of their proceedings. A petition in writing in legal form was presented to them at the outset, which is the " process" prescribed by law ; and they

gave notice of their hearing thereupon, had their hearing, heard evidence, examined the route, made a return, &c., which is the "mode of proceeding" prescribed by law and above alluded to. They did not exceed the limits of their authority in any of these particulars. Whatever defect exists in this case ranges itself under the head of "irregularities." See *Proctor* v. *Andover,* 42 N. H. 359 and 360. Our brethren also cite *Holcomb* v. *Moore,* 4 Allen 529, as "a case exactly in point." We have already alluded to this case in another connection. In Massachusetts, town and private ways are not laid out by the selectmen, as in this State, but the selectmen are required to make a report of the laying out thereof to the town, at a town-meeting warned and notified for that purpose; and the way is not established until the report of the laying out by the selectmen is accepted and allowed at such a meeting, except in certain cases not material to be considered here. Mass. Gen'l Stat., chap. 43, secs. 59 and 65. The way, in *Holcomb* v. *Moore,* must have been laid out in this manner. It is held in that State that *certiorari* does not lie to correct such proceedings, and that the only way to examine into their validity is by collateral proceedings. *Robbins* v. *Lexington,* 8 Cush. 292. The court in that case acknowledge the force of the argument, that considerations of policy and convenience require that a writ of *certiorari* should be resorted to instead of collateral proceedings in cases of this kind; but they say the practice in that State has always been otherwise, and they yield to it. In this State a different practice has been established, in the case of *Railroad* v. *Folsom* and other cases above cited; and we submit that the argument alluded to should control. When the difference in the statutes and the policy of the law upon this subject, in Massachusetts and this State, is considered, the case of *Holcomb* v. *Moore* has no weight in this State.

(6.) If the plaintiff was in a position in this case that would enable him to take advantage of the alleged defect in the laying out of the highway in question, and the court could consider his objection in this collateral proceeding, still we claim that the defect does not render the laying out illegal and invalid. The selectmen expressly find that "there is occasion for a new highway on the route described in the petition," and they therefore lay it out. As we have said before, it will be presumed that they rightly so found unless the contrary is clearly and explicitly proved. *Proctor* v. *Andover,* above cited;—see, also, *Parks* v. *Boston,* 8 Pick. 218. No evidence is offered to show that they so found from any other consideration than that of the public necessity and convenience. SHAW, C. J., says, in *Copeland* v. *Packard,* 16 Pick. 221, that "it is obvious that this consideration,—namely, at whose cost a highway is to be made (and we add, to be kept in repair),—can have no bearing upon the separate and distinct question whether such way be of common convenience or necessity." The objectionable clause in controversy does not show or tend to show that the selectmen found that there was occasion for a new highway, from any other consideration than that of public necessity and convenience. This clause is separate and distinct from the other; and if it is not authorized by law,

or is expressly prohibited by sec. 12, chap. 61, of the General Statutes, it may be considered void without impairing the rest of the laying out. *Cheshire Turnpike* v. *Stevens*, 10 N. H. 137 ; *Patten's Petition*, 16 N. H. 278 ; *State* v. *Rye*, 35 N. H. 376,—where it is held that that part of the commissioners' report fixing a time within which the highway shall be built is superfluous, and may be erased or not,—*Harrington* v. *Harrington*, 1 Met. 404, a case very similar to the one under consideration. In that case, the acceptance by the town of the report of their selectmen upon the way in question was "on the following conditions, to wit, that the said Daniel Harrington, 2d, shall build the said road and pay all the expenses of the same, and defend the town against all prosecutions." The court (SHAW, C. J.) say that " all the conditions, except that of paying the damages for land as part of the expenses, were in their nature conditions subsequent. The effect of a condition subsequent is not to prevent the act to which it is annexed from taking present effect ; but it may defeat it afterwards, or be attended with other legal consequences. It is obvious, therefore, that the operation of such a vote was to give immediate effect to the act of the selectmen and affirm the location of the way. *If the condition was contrary to law, then the condition alone was void, and the vote would stand as if it were absolute and unconditional.*" See, also, *Commonwealth* v. *Weiher*, 3 Met. 445, where it is said that the execution of an authority may be good in part, and bad in part, and that in such case it will be void only as to the excess : and 4 Kent's Com., 346, 386, and *Adams* v. *Adams*, Cowp. 651, are there cited to this point. This case, and the principle above stated, are cited with approval in *Proctor* v. *Andover*, 42 N. H. 355–6 ; *Commonwealth* v. *Carpenter*, 3 Mass. 268 ; *Commonwealth* v. *Blue Hill Turnpike*, 5 Mass. 420 ; *Commonwealth* v. *Derby*, 13 Mass. 433 ; *Commonwealth* v. *West Boston Bridge*, 13 Pick. 195 ; *Hopkinton* v. *Smith*, 15 N. H. 155 ; *Dudley* v. *Cilley*, 5 N. H. 558, where it was held that the condition imposed by the court was void, not the laying out. *Crowell* v. *Hopkinton*, 45 N. H. 9.

II. The other question transferred is, whether the defendant is liable in this action in consequence of leaving open the gates opening into the way as he entered upon it. As the plaintiff's counsel have not made any suggestions upon this point, we infer that they have abandoned it. However that may be, it is clear that the defendant cannot be liable in this action of trespass for leaving open the gates. This was an omission of duty, and not a commission of a wrong, on the part of the defendant ; and if he is liable therefor at all, it must be in an action of case and not in an action of trespass. *Fellows* v. *Brown*, 42 N. H. 364 ; *Hinks* v. *Hinks*, 46 Maine 423. This proposition is too plain to require the citation of authorities, or further argument.

*Flint*, for the plaintiff, in reply.

It does not alter the case to call the power of selectmen " judicial." They have certain discretionary authority within their jurisdiction, consisting mainly in judging whether the public necessity requires the

highway; and so far their authority may be called "judicial." If they commit an error in the exercise of this discretion, there is no remedy. In this sense their acts are "judicial," and in no other. But their authority or jurisdiction is one of the most limited kind. If they travel out of it, their acts are utterly void,—as, if they proceed without a petition—*Eames* v. *Northumberland*, 44 N. H. 67; *Haywood* v. *Charlestown*, 34 N. H. 23; or upon an invalid petition—*Clement* v. *Burns*, 43 N. H. 614, 615; or where the highway is part of one extending into another town—*Griffin's Petition*, 27 N. H. 343; or where the petition does not state facts sufficient to give jurisdiction—*Dinsmore* v. *Auburn*, 26 N. H. 356; or by reason of improper inducements—*State* v. *Newmarket*, 20 N. H. 519; or where their acts in any respect are not authorized by law—*State* v. *Richmond*, 26 N. H. 239, 240; *Gurnsey* v. *Edwards*, 26 N. H. 230;—and " everything will be presumed to be without their jurisdiction, which does not distinctly appear by the record to be within it." *Haywood* v. *Charlestown*, 34 N. H. 26, 27, citing *Morse* v. *Presby*, 25 N. H. 302.

It is suggested that this plaintiff is not in a position, or that this is not the proper way, to take exception to this laying out. If this plaintiff cannot make the objection, no one could. He is the only land owner interested. The way goes its whole length over his farm, and the year for taking an appeal has expired without his taking an appeal.

It has never been held in any case that this is not the proper mode of taking the exception. Indeed, every decision in this State goes upon the ground that this is the proper mode. In *Railroad* v. *Folsom* it is only held that in proper cases a *certiorari* will lie,—not that it is necessary in any case, much less in such a case as this. In *State* v. *Richmond*, 26 N. H. 247, the decision goes upon the ground that the exception would have been effectual if it had been taken in season. *State* v. *Newmarket*, 20 N. H. 519.

But cannot the court come to the defendant's aid by cutting off, eliminating, expunging, and excoriating the unlawful parts of this transaction, and leaving a highway new, perfect, and entire—lopping off these upas branches, and leaving a symmetrical olive-tree? We believe that this cannot be done; that the thing must be taken as it is, not as it should have been. The metamorphosis cannot be made.

FOSTER, J. In the establishment of highways within any town, the selectmen derive their authority and powers wholly from the statute. *Pritchard* v. *Atkinson*, 3 N. H. 335.

The statutes provide—Gen. Stats., ch. 61, § 1—that selectmen, on petition, may lay out any new highway within their town for which there shall be occasion, either for the accommodation of the public or of the person applying. And by the twelfth section of the same chapter it is enacted, that " any highway for the accommodation of an individual may be laid out, subject to such gates or bars across the same as may be expedient, to be erected and maintained by the person, his heirs or assigns, for whose benefit the highway is laid out."

Such was the law, substantially, for a long time prior to the enact-

ment of the General Statutes in 1867. And in such a condition of the law it has been uniformly considered and held that there was no distinction as to the duty of repairs and the liability for damages between ways laid out for the accommodation of individuals chiefly, and other common and public highways—the duty and the liability in both cases being cast upon the town. In either case the road is deemed to be a *public* highway. *Metcalf* v. *Bingham*, 3 N. H. 459; *Clarke* v. *B. C. & M. Railroad*, 24 N. H. 118; *Proctor* v. *Andover*, 42 N. H. 351.

Notwithstanding this, it is said to have been the practice to some extent in this State for selectmen, in laying out a highway subject to gates and bars, and for the accommodation of an individual, to impose upon that individual the burden of making and maintaining the highway; and that the selectmen in *this* case acted in conformity with that practice, as indicated by the forms of the returns of selectmen in such cases, which are to be found in some of the books provided for the guidance of town officers.

But whatever may have been the general practice, and whatever misapprehension may have existed as to the state of the law upon the subject,—and whether, with the design of correcting an erroneous practice and a misunderstanding of the law, or of placing new restrictions upon the jurisdiction and powers of selectmen concerning highways,— the legislature of 1867, in the enactment of the General Statutes, engrafted upon the law as it had previously existed the express provision that, except with regard to the erection and maintenance of gates or bars across a highway laid out for the accommodation of an individual, " no other condition shall be affixed to the said laying out, or imposed upon the individual for whose benefit the laying out was made." Gen. Stats., ch. 61, § 12.

In express violation of this statute, the selectmen of Bow, in their return of the laying out of the highway in question, on the 5th January, 1869, undertook to require that the highway should be " made by the petitioners," and should " remain a highway so long as said petitioners shall keep it in repair, and no longer."

The plaintiff maintains that the laying out of the highway was invalid by reason of the prohibited condition; and that he is entitled to treat the defendant as a trespasser in passing through his lands upon the pretended highway.

The power to lay out highways, conferred by our statutes upon selectmen, is of a judicial nature. *Haywood* v. *Charlestown*, 34 N. H. 26; *State* v. *Richmond*, 26 N. H. 235; *Hall* v. *Manchester*, 39 N. H. 301. And errors in the proceedings of such a tribunal may be corrected by a *certiorari*. *Parks* v. *Mayor, &c., of Boston*, 8 Pick. 218; *Hancock* v. *Boston*, 1 Met. 122; *State* v. *Richmond*, 26 N. H. 236.

But it is equally true, that wherever any persons assume to act under a special and limited power conferred by law, their proceedings may be impeached when collaterally brought in question; and their doings may be avoided by showing that they had no jurisdiction, or that they have exceeded the limits of their authority. *Russell* v. *Perry*, 14 N. H. 152; *State* v. *Richmond*, before cited; *Gurnsey* v. *Edwards*, 26 N. H. 229.

In *Pritchard* v. *Atkinson*, 3 N. H. 337, Mr. Ch. J. RICHARDSON said : " As selectmen derive their authority to lay out highways from a statute, it is not to be doubted that, in exercising the authority, they must substantially pursue the directions of the statute: otherwise their doings will be void."

But since the decision in *State* v. *Richmond*, this term " void " is perhaps seldom, unless in a very clear case, to be regarded as implying a complete nullity, but is to be taken in a legal sense, subject to large qualifications in view of all the circumstances calling for its application and the rights and interests to be affected in a given case.

The laying out of a highway by a tribunal having no jurisdiction of the subject-matter would be *void*, in the pure sense of that term—absolutely null — *Gurnsey* v. *Edwards*, before cited; but the laying of a road by a tribunal having jurisdiction of the subject-matter and of the parties concerned therein may be so affected by some. irregularity as to be void in a different sense,—that is, void as to some person, or in some particular, without impeachment of the whole proceeding; or, perhaps, void, until or unless confirmed by the act or acquiescence of the party entitled to bring the validity of the matter in question.

And in the present case, although the selectmen have manifestly exceeded their authority by imposing upon the petitioners duties and liabilities not merely inconsistent with the whole theory of the maintenance of public highways, but expressly prohibited by the statute, still, we are not inclined to regard their proceedings as void absolutely, and as to all the world, and for all purposes, and as incapable of confirmation to any extent.

The defendant contends that the objectionable parts of the return and of the laying out are separate and distinct from the valid parts, and may be considered void or voidable without impairing the rest of the proceedings ; that if the condition must be regarded as contrary to law, the condition alone is void or voidable, and the remainder may nevertheless stand as if it were absolute and unconditional.

It is unquestionably a sound principle, that the execution of a power may be good in part and bad in part, and that in many cases the excess only in the execution of the power will be void. But this principle holds good only where there is a complete execution of the authorized and valid power, and only a distinct and independent limitation unauthorizedly added, and where the boundaries between the sound part and the excess are clearly distinguishable. 4 Kent's Com. 346.

But it seems to us that the clause in question cannot be regarded as an independent, subsequent condition. On the contrary, if it may be taken into consideration at all, it serves to convince us that without such condition and limitation the selectmen never would have undertaken to lay out the road.

It is undoubtedly to be presumed in the outset, that the selectmen were influenced only by considerations of the public exigency in laying out the road ; but this presumption *may* be controlled, and, as it seems to us, it is, by the fact of the imposition of conditions and limitations

entirely inconsistent with the supposition that the road was required for the public necessity or convenience.

It is entirely clear, as we have seen, that a road laid out subject to gates and bars, and laid out originally for the accommodation of an individual, is still a public highway. "Indeed," says BELLOWS, J., in *Proctor* v. *Andover*, "it must very often happen, that roads, originally laid chiefly for the accommodation of individuals, become in a short time wholly public in their character, by the progress of settlements along their line, or simply by their extension and connection with other roads; and the legislature could never have intended to exempt the towns from liability in such cases, because originally laid out chiefly with a view to private use."

And therefore it is, that the general provisions of the statutes with regard to the making and maintenance of the repairs of highways, and the liability of towns for damages by reason of defects therein (Gen. Stats., ch. 66, § 1; ch. 68, § 1; ch. 69, § 1) cover and embrace all such highways as the one in question.

But by this condition *all* these provisions relating to *public* highways are nullified. There is a wide difference between this case and that of *Dudley* v. *Cilley*, 5 N. H. 558, where the condition only, was held void. But there the *only* condition annexed to the report was, that the petitioners should pay the land damages. Here the petitioners are required to build and to keep in repair, and when the road gets out of repair it is to become *ipso facto* no road; and so the town have no duty, no burden, and no liability. And all this appears from the report itself.

What becomes, then, of the presumption that the road was demanded by the public necessity or convenience? Is it not fair to presume, is not the inference inevitable, that the selectmen could not have regarded that road as a public necessity or convenience, which did not to their minds justify the necessity for the imposition of *any* of the burdens and liabilities concurrent with and indispensable from the advantages of and the occasion for a public highway?

It is contended that we ought to expunge the condition, and hold the laying out of this road valid; but to do so we must obstinately close our eyes to the *obvious* considerations which affected the action of the selectmen. It could not have been for the sake of the public good that they ignored the public duty, the public burthens, and the public liability, contrary to the provisions of all the other laws relating to the liability and duty of towns concerning highways, and in *express* violation of the plain provisions of the particular statute applicable to this particular case.

It seems to us, therefore, that, for the purpose of ascertaining the intention of the selectmen and for giving a construction to their return, the whole must be taken together. And being thus taken together, we are not precluded from inquiring into the facts of the case and the motives which may have influenced the selectmen. Evidence *dehors* the record is not required for this purpose. The report contains intrinsic, palpable evidence so clear as to control and exclude the presumption that this road was laid out *pro bono publico*.

"And when it appears," said RICHARDSON, C. J., in *Dudley* v. *Cilley*, "that a court has laid out a highway for any other cause than common convenience and necessity, the proceedings are irregular and may be quashed." See *Com.* v. *Sawin*, 2 Pick. 547.

And when we look at the whole, and construe one part with reference to the other, we become satisfied that to reject so very essential a part of the return as this condition, and allow the rest to stand, would be to do what the selectmen never intended, namely, to establish a common public highway in accordance with and subject to all the provisions of the law regulating the liability of towns in relation thereto.

We cannot suppose they would have laid out the road if they had understood the condition was void. It was annexed for the purpose of controlling and limiting the liability of the town. It was annexed for the sole advantage of the petitioners. It controlled and governed the decision of the selectmen. It was a limitation contrary to law, and it was so intimately connected with the proceedings as to contaminate and invalidate the whole.

But is the plaintiff in a position to take advantage of the defect in these proceedings, in the manner now adopted by him ?

The laying out of this highway is to be regarded as void only as to such as have cause to complain ; it is voidable only by those who are injured. And the plaintiff may regard himself as an injured party. As to him the proceedings of the selectmen were *in invitum*. As to him the rule applies, that whenever, in pursuance of law, the property of an individual is to be divested by proceedings against his will, there must be a strict compliance with all the provisions of the law, which are made for his protection and benefit. Those provisions must be regarded as in the nature of conditions precedent, which must be complied with before the right of the property owner is disturbed. Cooley's Const. Lim. 528.

A case of strong necessity must exist to furnish a proper occasion for taking the plaintiff's land against his will for the accommodation of another individual—*Dudley* v. *Cilley*, 5 N. H. 560 ; a necessity strong enough, very clearly, to authorize the establishment of this highway upon *public* grounds and *without* the condition annexed.

"Irregularities," says Mr. Justice BELL, "which is but another word for illegalities, in the proceedings in an action, furnish everywhere ground of exception, to the party whose rights are affected by them." *State* v. *Richmond*, before cited. The plaintiff had title to and was in possession of land over which the road in question was laid, and he was clearly in a situation to take exception to the proceedings. *Gurnsey* v. *Edwards*, before cited ; *Holcomb* v. *Moore*, 4 Allen 529.

But must it follow, therefore, that every individual having occasion to use a road apparently established according to law, because so situated in the view of the public as to suggest no question of its legality, must be required to examine into the validity of the laying out of the road before he may venture upon it ?

It seems to us more in accordance with common sense, more reasonable, just, and equitable, that the party who alleges a highway to be

invalid by reason of some defect in the proceedings leading to its laying out, should establish its invalidity by proceedings instituted for that purpose; and that he should not be permitted to treat the public as trespassers for using the road in the proper and ordinary manner.

In this case, when the defendant entered upon the road he supposed he had the right to do so. He knew the selectmen had laid out the highway, and he had no reason to suppose it had not been legally established.

The authorities in this State are uniform, it is believed, to this effect, that where a judicial tribunal has *jurisdiction* of the subject-matter concerning which they assume to act, its judgment must stand, notwithstanding irregularities in the course of the proceeding, until reversed by the proper tribunal. No matter how grave, serious, or fatal, even, those irregularities may be, even if to the extent of rendering the judgment wholly invalid when duly impeached, by due process for that purpose, it must stand until legally reversed by a superior legal tribunal having controlling authority in the premises. It would work manifest and great injustice if every person through whose land a highway may be opened by the selectmen or commissioners should be at liberty to prosecute (and at the same time *persecute*) every innocent traveller who, using the highway for lawful purposes, thereby unconsciously finds himself caught in traps and snares set along the whole course of the route.

Counsel for the plaintiff seem to regard the case of *State* v. *Richmond*, before cited, as in conflict with the current of the authorities upon this subject, and as sustaining their position that the proceedings of the selectmen may be drawn in question collaterally, as by means of this suit, and thus impeached. But we do not so understand the matter. It is true that the dicta of Mr. Justice BELL, in *State* v. *Richmond*, go to this extent,—that the proceedings of an inferior tribunal, when brought in question collaterally, " may be impeached, if such tribunal has acted in a case, or against a person, or by a process or mode of proceeding, beyond its jurisdiction and not warranted by law." But in the case before us, the selectmen clearly had jurisdiction of the subject-matter and of the parties.

All their proceedings with regard to form of process, notice, hearing, and return, seem to have been in accordance with the forms of law ; but the error and defect seem to have arisen by reason of a mistake of the tribunal with regard to the exercise of their powers under the statute.

The defect would seem to range itself under the head of irregularities, rather than as a result of action outside of and beyond the jurisdiction of the selectmen. *Proctor* v. *Andover*, before cited; Hilliard on New Trials 547–8.

The plaintiff will probably find a sufficient remedy provided by law for his relief, unless he has lost it by lapse of time.

Upon all these considerations, we are compelled to the conclusion that there must be　　　　　　　　　　*Judgment on the verdict.*